IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARCEL D. McDANIEL, | ) | CASE NO. 5:15 CV 1061 |
| | ) | |
| Petitioner, | ) | JUDGE JACK ZOUHARY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| KIMBERLY CLIPPER, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## Introduction

Before me[1] is the petition of Marcel D. McDaniel for a writ of habeas corpus under 28 U.S.C. § 2254.[2] McDaniel was convicted by a Summit County Court of Common Pleas, jury in 2003 of attempted murder and felonious assault.[3] He is serving ten years for attempted murder, six years for felonious assault, and three years for the gun specification to be served consecutively for a total of nineteen years.[4] He is currently incarcerated at the Lorain Correctional Institution in Lorain, Ohio.[5]

---

[1] This matter was referred to me under Local Rule 72.2 by United States District Judge Jack Zouhary by non-document order dated May 28, 2015.

[2] ECF # 1.

[3] *Id.*

[4] *Id.*

[5] http://www.drc.ohio.gov/offendersearch.

McDaniel raises one ground for habeas relief.[6]  The State has filed a return of the writ arguing that the petition should be denied because it is barred by the AEDPA statute of limitations.[7]  McDaniel has filed a traverse.[8]

For the reasons that follow, I will recommend McDaniel's petition be dismissed.

## Facts

### A.    Underlying facts, conviction, and sentence

The facts that follow come from the decision of the appeals court.[9]

In 2002, McDaniel was involved in a shooting at a car wash that resulted in one man (Corey Harper) dying and another (John Ellis) being struck in the head with a gun and shot at as he fled the scene.[10]  A grand jury indicted McDaniel for his involvement in the shooting on the following counts: (1) felony murder with respect to Harper; (2) attempted murder with respect to Ellis; (3) felonious assault with respect to Ellis; (4) two counts of having weapons under disability; (5) improperly discharging a firearm at or into a habitation or school; (6) carrying concealed weapons; and (7) multiple firearm specifications.[11]  McDaniel went to

---

[6] ECF # 1.

[7] ECF # 6.

[8] ECF # 12.

[9]  Facts found by the state appellate court on its review of the record are presumed correct by the federal habeas court.  28 U.S.C. § 2254(e)(1); *Mason v. Mitchell*, 320 F.3d 604, 614 (6th Cir. 2003) (citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)).

[10] ECF # 6, Attachment 2 at 573.

[11] *Id*.

-2-

trial along with his co-defendant, Keith Gilcreast, but the trial resulted in a hung jury with respect to McDaniel.[12]  Before another jury trial could occur, McDaniel agreed to plead guilty in exchange for the State dismissing a variety of counts.[13] McDaniel pleaded guilty to attempted felony murder, the firearm specification attached to that count, and felonious assault.[14] On May 7, 2003, the court sentenced McDaniel on both counts, as well as the firearm specification, for a total of 19 years in prison.[15]

Subsequently, McDaniel sought to withdraw his plea, the court denied his motion, and an appeal ensued.[16]  On November 17, 2009, the court of appeals vacated the May 7, 2003 journal entry and remanded the matter for a new sentencing hearing due to an error in the imposition of post-release control.[17] On remand, the trial court conducted another sentencing hearing and once again sentenced McDaniel to 19 years in prison.[18]  On appeal from that judgment, McDaniel argued that the trial court erred by not merging his convictions as allied

---

[12] *Id*.

[13] *Id*. at 574.

[14] *Id*.

[15] *Id*.

[16] *Id*.

[17] *See State v. McDaniel*, 9th Dist. Summit No. 24838 (Nov. 17, 2009).

[18] ECF # 6, Attachment 1 at 261-262.

-3-

offenses of similar import.[19]   Due to the issuance of *State v. Johnson,*[20] the appellate court remanded the case to the trial court for it to consider and apply *Johnson* in the first instance as it relates to allied offenses of similar import.[21]

On remand, the parties entered into a stipulation, regarding the facts underlying McDaniel's convictions.[22]  The parties agreed that they would brief the allied offense issue based on those facts, and the trial court would issue a ruling after considering their briefs in light of *Johnson*.[23]  Both parties filed their respective briefs.[24]  On March 27, 2012,  the trial court determined that McDaniel's counts were not allied offenses of similar import and "there [was] no need to resentence [McDaniel]".[25]   McDaniel attempted to appeal from the Court's entry, but the court of appeals dismissed the appeal for lack of jurisdiction.[26]

The trial court then issued another entry, confirming its ruling that McDaniel's convictions were not allied offenses and sentencing McDaniel to 19 years in prison.[27]

---

[19] *Id.* at 269.

[20] *State v. Johnson*, 128 Ohio St. 3d 153, 2010-Ohio-6314.

[21] *See State v. McDaniel*, 9th Dist. Summit No. 25492, 2011-Ohio-5001, ¶ 8-10.

[22] ECF # 6, Attachment 2 at 574.

[23] *Id*.

[24] *Id*.

[25] *Id.* at 574-575.

[26] *See State v. McDaniel*, 9th Dist. Summit No. 26415 (Apr. 9, 2013).

[27] ECF # 6, Attachment 2 at 575.

**B.      Direct Appeal**

*1.      Ohio Court of Appeals*

McDaniel, through counsel, filed a timely[28] notice of appeal[29] with the Ohio Court of

Appeals. In his brief, McDaniel filed one assignment of error:

> The trial court erred in finding that the offenses of attempted
> murder and felonious assault were not allied offenses of similar
> import in the matter at hand.

The state filed a brief in response.[30]  McDaniel filed a reply brief.[31]  On January 22,

2014, the Court of Appeals affirmed the decision of the trial court.[32]

---

[28]   Under Ohio App. Rule 4(A), to be timely, a party must file a notice of appeal
within 30 days of the judgment being appealed. *See Smith v. Konteh*, No. 3:04CV7456, 2007
WL 171978, at *2 (N.D. Ohio Jan. 18, 2007) (unreported case).  McDaniel's conviction and
sentence were journalized on June 19, 2013 (*id.* at 492) and the notice of appeal was filed on
June 28, 2013.

[29] ECF # 6, Attachment 2 at 494.

[30] *Id.* at 538.

[31] *Id.* at 562.

[32] *Id.* at 573.

-5-

**2.** *The Supreme Court of Ohio*

McDaniel, through counsel, thereupon filed a timely[33] notice of appeal with the Ohio

Supreme Court.[34]  In his brief in support of jurisdiction, he raised one proposition of law:

> The Ninth District Court of Appeals erred in affirming the trial
> court's finding that the offenses of attempted murder and
> felonious assault are not allied offenses of similar import and
> erred by not applying this Court's analysis set forth in *State v.
> Johnson* and *State v. Underwood*.[35]

The State filed a waiver of memorandum in response.[36]  On May 28, 2014, the Ohio Supreme

Court declined jurisdiction pursuant to S. Ct. Prac. R. 7.08(B)(4).[37]  On December 11, 2014,

McDaniel, *pro se*, filed a motion to reopen per Ohio Appellate Rule 26(B) alleging

ineffective assistance of counsel with regard to this case in the Ohio Supreme Court.[38]  The

motion was denied on January 28, 2015.[39]

---

[33]  *See* Ohio S. Ct. Prac. R. 7.01(A)(5)(b) (To be timely, a notice of appeal must be
filed within 45 days of entry of the appellate judgment for which review is sought.); *See
Applegarth v. Warden*, 377 Fed. App'x 448, 450 (6th Cir. 2010) (discussing forty-five day
limit) (unreported case).

[34]  *Id.* at 583.

[35]  *Id*. at 585

[36]  *Id*. at 614.

[37]  *Id*. at 615.

[38]  *Id*. at 616.

[39]  *Id*. at 622.

**C.    Petition for writ of habeas corpus**

On May 27, 2015, McDaniel, through other counsel,[40] timely filed[41] a federal petition

for habeas relief.[42] As noted above, he raises one ground for relief:

> GROUND ONE:    The trial court erred in finding that Petitioner's
> convictions of Attempted Murder and Felonious Assault
> are not allied offenses of similar import.
>
> Supporting Facts:    The State and Petitioner agreed to use evidence presented
> during trial in which Petitioner received a hung jury,
> prior to his plea.  Within the trial, there was no evidence
> other than the evidence showing Petitioner was present
> at the time of the shooting and that he left the scene with
> the Co-Defendant who was convicted of Murder
> following the same trial. In its' decision denying
> Petitioner's Motion for Finding that Offenses are Allied
> Offenses of Similar Import, the trial court made factual
> misrepresentations as to what evidence was presented
> during the trial.  There was no evidence presented during
> trial that showed that Petitioner's conduct was not a
> continuing course conduct; therefore, the consecutive
> sentences were a violation of Petitioner's right to be free
> of double jeopardy.

---

[40] McDaniel was represented by Timothy Ivey at trial and at the time of his plea in state court.  At sentencing, he was represented by Timothy Ivey and Jana DeLoach.  On appeal, McDaniel was represented by Jana DeLoach.  In the instant petition, he is represented by Jonathan T. Sinn.  *See* ECF # 1 at 16.

[41] The present petition for federal habeas relief was filed on May 27, 2015. ECF # 1. As such, it was filed within one year of the conclusion of McDaniel's direct appeal in the Ohio courts and so is timely under 28 U.S.C. § 2254(d)(1). In as much as the State has raised an issue of timeliness, it is more thoroughly discussed below.

[42] ECF # 1.

# Analysis

**A.     Preliminary observations**

Before proceeding further, I make the following preliminary observations:

1.      There is no dispute that McDaniel is currently in state custody as the result of his conviction and sentence by an Ohio court, and that he was so incarcerated at the time he filed this petition. Thus, he meets the "in custody" requirement of the federal habeas statute vesting this Court with jurisdiction over the petition.[43]

2.      In addition, McDaniel states,[44] and my own review of the docket of this Court confirms, that this is not a second or successive petition for federal habeas relief as to this conviction and sentence.[45]

3.      Moreover, subject to the timeliness arguments raised by the State, it appears that these claims have been totally exhausted in Ohio courts by virtue of having been presented through one full round of Ohio's established appellate review procedure.[46]

4.      Finally, because McDaniel is represented by counsel, he has not requested the appointment of counsel,[47] nor has he requested an evidentiary hearing to develop the factual bases of his claims.[48]

---

[43] 28 U.S.C. § 2254(a); *Ward v. Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984).

[44] *See* ECF # 1 at 13.

[45] 28 U.S.C. § 2254(b); *In re Bowen*, 436 F.3d 699, 704 (6th Cir. 2006).

[46] 28 U.S.C. § 2254(b); *Rhines v. Weber*, 544 U.S. 269, 274 (2005); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

[47] 28 U.S.C. § 2254(h); Rule 8(c), Rules Governing 2254 Cases.

[48] 28 U.S.C. § 2254(e)(2).

**B.     Standards of review**

*1.     Timeliness*

*a.     Standard*

Under 28 U.S.C. § 2244(d)(1), as amended by § 101 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[49] a person in custody under a judgment of a state court must file an application for a writ of habeas corpus within one year from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.[50]

Under 28 U.S.C. § 2244(d)(2), the limitations period is tolled during the pendency of a "properly filed" application for state postconviction relief or other collateral review. A state application for post-conviction relief is "properly filed" within the meaning of § 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable laws and rules

---

[49] Pub. L. No. 104-132, 110 Stat. 1214.

[50] 28 U.S.C. § 2244(d)(1).

governing filings," such as those prescribing the time limits for filing.[51] State post-conviction or collateral review applications rejected by the state courts on timeliness grounds are not "properly filed" and, therefore, are not subject to statutory tolling under § 2244(d)(2).[52]

"The tolling provision does not, however, 'revive' the limitations period (*i.e.*, restart the clock at zero); it can only serve to pause a clock that has not yet fully run."[53] Once the limitations period is expired, state collateral review proceedings can no longer serve to avoid the statute of limitations bar.[54]

Moreover, the AEDPA's statute of limitations is subject to equitable tolling,[55] "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the litigant's control."[56] Equitable tolling is granted "sparingly."[57] A habeas petitioner is entitled to equitable tolling only if he establishes that (1) "he has been pursuing his rights diligently;" and (2) "some extraordinary circumstance stood in his way and prevented timely

---

[51] *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).

[52] *See Allen v. Siebert*, 552 U.S. 3, 5-6 (2007) (per curiam); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Vroman v. Brigano*, 346 F.3d 598, 603 (6th Cir. 2003).

[53] *Vroman*, 346 F.3d at 602 (quoting *Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D.N.Y. 1998)).

[54] *Id.*

[55] *See Holland v. Florida*, 560 U.S. 631, 646 (2010).

[56] *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)), cert. denied, 133 S. Ct. 187 (2012).

[57] *Id.* (quoting *Robertson*, 624 F.3d at 784).

-10-

filing."[58] Although the Sixth Circuit previously used a five-factor approach in determining whether a habeas petitioner is entitled to equitable tolling, *Holland v. Florida's* two-part test has replaced the five-factor inquiry as the "governing framework" to apply.[59]

b.    *Application of standard*

The State argues that McDaniel's habeas petition is time-barred.[60]  As explained above, § 2244(d)(1)(A) requires that federal habeas petitions be filed within one year of "the date on which the judgment became final by the conclusion *of direct review* or the expiration of the time for seeking such review."[61]  Here, according to the State, the trial court issued its judgment on May 7, 2003.[62]  Under Ohio law, McDaniel had thirty days from the date of that judgment within which to file his direct appeal,[63] but he did not.  Therefore, the trial court's judgment became "final" under § 2244(d)(1)(A) when McDaniel's thirty days to appeal

---

[58] *Id.* (quoting *Holland*, 560 U.S. at 649 (internal quotations omitted)); *see also*, *Pace*, 544 U.S. at 418.

[59] *Hall*, 662 F.3d at 750 (citing *Robinson v. Easterling*, 424 F. App'x 439, 442 n.1 (6th Cir. 2011), cert. denied, 132 S. Ct. 456 (2011)).

[60] ECF # 6 at 9-14.

[61] 28 U.S.C. § 2244(d)(1)(A) (emphasis added).

[62] ECF # 6, Attachment 1 at 12-13.

[63] *See* Ohio R. App. P. 4(A) (parties have thirty days to appeal from order that is "final upon its entry," as defined by Criminal Procedure Rule 32(C)); Ohio R. Crim. P. 32(C) ("A judgment of conviction shall set forth the fact of conviction and the sentence[,]" and "is effective only when entered on the journal by the clerk."); *State v. Baker*, 119 Ohio St. 3d 197, 199, 2008-Ohio-3330, ("Journalization of the judgment of conviction pursuant to Crim. R. 32(C) starts the 30-day appellate clock ticking.") *overruled on other grounds* by *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204.

expired, on June 6, 2003.[64]  The clock on McDaniel's habeas petition then began to run the following day, June 7, 2003, and expired a year later, on June 7, 2004.[65]  Although a tolling action could have extended McDaniel's AEPDA limitations period, none was filed.  And McDaniel did not initiate this federal habeas action until May 27, 2015, more than a decade past the deadline.[66]

McDaniel asserts that the statute of limitations on his habeas petition was not triggered until the trial court entered its "final judgment of his conviction [on] June 19, 2013, which he continued to appeal – never missing a deadline until the matter rested in the present Court."[67]  June 19, 2013, was the date of the trial court's journal entry upon McDaniel's second resentencing.[68]  The 2013 resentencing originated with a motion to withdraw a guilty plea that McDaniel filed in the trial court in 2009, claiming the court had failed to properly notify him that his sentence included a mandatory term of post-release control as required under an intervening change in Ohio law.[69]  The trial court denied the motion, and McDaniel

---

[64] ECF # 6 at 10.

[65] 28 U.S.C. § 2244(d)(1)(A).  *See also* Fed. R. Civ. P. 6(a)(1) ("In computing any time period . . . exclude the day of the event that triggers the period."); *Bronaugh v. Ohio,* 235 F.3d 280, 285 (6th Cir. 2000) (applying Federal Civil Rule 6(a) standards to computation of time for § 2244(d) statute-of-limitations purposes).

[66] ECF # 1.

[67] ECF # 12 at 7.

[68] ECF # 6, Attachment 2 at 492-93.

[69] ECF # 6, Attachment 1 at 14-34.  *See State v. Fischer*, 128 Ohio St. 3d 92, 2010-Ohio-6238.

appealed.[70] The court of appeals dismissed McDaniel's appeal, but determined the May 2003 judgment was void due to its improper notification of post-release control, vacated the judgment, and remanded to the trial court for a new sentencing hearing.[71] The trial court conducted another sentencing hearing and again sentenced McDaniel to nineteen years in prison in a judgment entry dated June 14, 2010.[72] McDaniel appealed the resentencing, arguing in part that the trial court erred by not merging his attempted murder and felonious assault convictions as allied offenses of similar import.[73] The court of appeals agreed, based on yet another change in Ohio law, and remanded the case again for resentencing.[74] The trial court issued a judgment entry on March 27, 2012. Applying the new law, it found McDaniel's attempted murder and felonious assault charges were not allied offenses of similar import, and, therefore, there was "no need to resentence" him.[75] McDaniel appealed again.[76] This time, the appellate court ruled it was without jurisdiction to consider the appeal because the trial court did not issue a final "judgment of conviction" under Ohio law stating

---

[70] ECF # 6, Attachment 1 at 40-42, 103.

[71] *Id*. at 184-91.

[72] *Id*. at 261-62.

[73] *Id*. at 263-302.

[74] ECF # 6, Attachment 2 at 343-44 (citing *State v. Johnson*, 128 Ohio St. 3d 153, 2010-Ohio-6314).

[75] *Id*. at 403.

[76] *Id*. at 404.

both the conviction and the sentence.[77]  The trial court issued a new journal entry on May 8, 2013, reimposing McDaniel's original sentence, which McDaniel appealed.[78]  The appellate court again found the trial court's judgment did not meet the requirements of a final "judgment of conviction," this time because it did not include McDaniel's convictions.[79]  Finally, in the June 19, 2013, journal entry, the trial court resentenced McDaniel in a proper "judgment of conviction," finding no allied offenses of similar import and restating McDaniel's original convictions and sentences.[80]  This judgment was affirmed by the state court of appeals, and the Ohio Supreme Court declined jurisdiction on May 28, 2014.[81]  McDaniel moved to reopen his direct appeal in the Ohio Supreme Court, but the court denied the motion on January 28, 2015.[82]

McDaniel argues that the 2013 resentencing, addressing his allied-offenses challenge, restarted AEPDA's one-year limitations period governing his federal habeas petition.[83]  Thus, under § 2244(d)(1)(A), the limitations period began when that judgment became final, which occurred when the time  in which to petition for certiorari review in the United States

---

[77] *Id*. at 484-85.

[78] *Id*. at 486-89.

[79] *Id*. at 490-91.

[80] *Id*. at 492-93.

[81] *Id.* at 494-615.

[82] *Id*. at 616-22.

[83] ECF # 12 at 9-10.

Supreme Court expired, ninety days after the Ohio Supreme Court denied discretionary review.[84]  That date would be August 27, 2014, making McDaniel's May 2015 habeas petition timely.

McDaniel cites the United States Supreme Court case *Burton v. Stewart*[85] as support.[86] In that case, state appellate courts affirmed the habeas petitioner's conviction on direct appeal, but vacated his sentence; he was resentenced on remand in March 1998.[87]  The petitioner filed an unsuccessful habeas petition in December 1998 challenging his conviction, and another petition in 2002 challenging the constitutionality of his new sentence.[88]  The Court held that the petitioner's 2002 petition was "second or successive" because, like his previous petition, it challenged his 1998 judgment.[89]  Of relevance here, the Court addressed the petitioner's argument that he had to file the first petition challenging his conviction in 1998 or the claims would have been time-barred.[90]  The Court reasoned that for purposes of AEDPA's statute of limitations, "'[f]inal judgment in a criminal case means sentence.  The

---

[84] Sup. Ct. R. 13.1; *Lawrence v. Florida*, 549 U.S. 327, 333 (2007); *Bronaugh*, 235 F.3d at 283.

[85] *Burton v. Stewart*, 549 U.S. 147 (2007) (per curiam).

[86] ECF # 12 at 9-10.

[87] *Burton,* 549 U.S. at 149-51.

[88] *Id*. at 151-52.

[89] *Id*. at 153.

[90] *Id.* at 156.

-15-

sentence is the judgment.'"[91]  Thus, it held that the petitioner's "limitations period did not begin until both his conviction *and* sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review'-which occurred well *after* Burton filed his 1998 petition."[92]  The Sixth Circuit followed *Burton* in a factually analogous case, *Rashad v. Lafler,*[93] holding that where a habeas petitioner's conviction was affirmed on direct review but his case was remanded for resentencing because his initial sentence was infirm, the judgment was "final" under § 2244(d)(1)(A) only after direct review of the new sentence.[94]

The State argues that "*Burton* has no applicability to a situation where, as here, a sentence is challenged in a *postconviction* proceeding following the judgment becoming final after direct review."[95]  But *Rashad* tells us otherwise.  In it, the Sixth Circuit distinguished its holding from its earlier decision in *Bachman v. Bagley,*[96] in which it considered whether the AEDPA statute of limitations began anew when the trial court designated the petitioner a sexual predator years after his underlying conviction and sentence had been affirmed on

---

[91] *Burton*, 549 U.S. at 156 (quoting *Berman v. United States*, 302 U.S. 211, 212 (1937)).

[92] *Id*. at 156-57 (emphasis original).

[93]  *Rashad v. Lafler*, 675 F.3d 564 (6th Cir. 2012).

[94] *Id*. at 568.

[95] ECF # 6 at 12 (emphasis original).

[96]  *Bachman v. Bagley*, 487 F.3d 979 (6th Cir. 2007).

direct appeal.[97]  The court held in *Bachman* that the petitioner's "designation as a sexual predator started the running of a ne[w] statute of limitations period," but it stressed the new limitations period applied "to challenges to the sexual predator designation *only*—not . . . to challenges to his underlying conviction."[98]  The *Bachman* court, in turn, noted its earlier decision in *Linscott v. Rose*,[99] in which it held that "'the one-year statue of limitations begins to run on a habeas petition *that challenges a resentencing judgment* on the date that the resentencing judgment became final, rather than the date that the original conviction became final.'"[100]  The *Rashad* court reconciled its holding, and *Burton*'s, with *Bachman*'s by explaining:

> *Bachman* differs from today's case because the state appellate courts affirmed Bachman's conviction and his sentence on the first round of direct review. His judgment thus became final upon the conclusion of that first round of direct review, *Burton*, 549 U.S. at 156–57, 127 S.Ct. 793, and he could not use his subsequent designation as a sexual predator to reopen his final conviction. Here, by contrast, Rashad's judgment did not become final after his first round of direct review because he no longer was subject to a sentence. The judgment became final upon the conclusion of direct review of the new sentence he received at resentencing. *See id*. at 156–57, 127 S.Ct. 793.[101]

---

[97] *Rashad*, 675 F.3d at 569.

[98] *Bachman,* 487 F.3d at 983 (emphasis original).

[99] *Linscott v. Rose*, 436 F.3d 587 (6th Cir. 2006).

[100] *Bachman,* 487 F.3d at 982 (quoting *Linscott*, 436 F.3d at 591(emphasis added)). The *Linscott* court explained that "[t]he plain language of [§ 2244(d)(1)(A)] dictates this result where the 'judgment' being challenged is the resentencing judgment."  *Linscott*, 436 F.3d at 591.

[101] *Rashad*, 675 F.3d at 569.

Thus, in *Rashad*, the Sixth Circuit reaffirmed *Bachman's* holding that a resentencing that occurs after direct review of a petitioner's conviction and sentence is final in effect "reopens [the] original judgment and sentence, and therefore . . . the one-year period [under § 2244(d)(1)(A)] beg[ins] again following the [new sentence]."[102] But this rule applies only to "petitions that bring legal challenges to the same event that causes the restarting of the statute of limitations clock."[103]

This precedent – *Burton*, *Rashad*, and *Bachman* – leads me to conclude that given the circumstances of this case, the trial court's second, 2013 resentencing restarted the AEDPA statute of limitations, and McDaniel's habeas petition is timely. The state appellate court vacated McDaniel's original judgment from 2003 and expressly directed the trial court to issue a final "judgment of conviction" upon the second resentencing, setting forth McDaniel's convictions and sentence, and including the court's allied-offenses ruling. And McDaniel's sole ground for relief in his habeas petition challenges that allied-offenses decision.

---

[102] *Bachman*, 487 F.3d at 982 (citing *Linscott v. Rose*, 436 F.3d 587, 591 (6th Cir. 2006) and *DiCenzi v. Rose*, 452 F.3d 465, 469 (6th Cir. 2006)).

[103] *Id.* After *Burton*, some lower courts within the Sixth Circuit questioned whether *Bachman*'s holding had been undermined. *See, e.g., Johnson v. Warden, Lebanon Corr. Inst.*, No. 1:09cv336, 2010 WL 2889056, at **5-7 (S.D. Ohio June 23, 2010), *adopted*, 2030 WL 2889057 (S.D. Ohio July 20, 2010). *Rashad* resolved that question. Indeed, when the Sixth Circuit recently refused to adopt the *Bachman* rule in the context of second or successive habeas petitions, it stressed that its decision "should [not] be taken to call *Bachman* into doubt." *In re Stansell*, – F.3d – , 2016 WL 3606808, at *4 (6th Cir. July 1, 2016).

-18-

The State further argues, however, that "McDaniel's resentencing during collateral proceedings to remedy a technical error cannot restart his AEDPA limitations period for claims regarding his underlying conviction."[104] It cites for support the Sixth Circuit unreported decision in *Mackey v. Warden, Lebanon Corr. Inst*.[105] In that case, a federal habeas petitioner, like McDaniel, did not complete his direct appeal, but obtained a resentencing after filing a post-conviction motion in the trial court arguing that his original sentence was void under Ohio law because it provided no notice of the mandatory post-release controls.[106] The Sixth Circuit held that because, under Ohio law, the trial court was limited in its authority on resentencing to remedying the technical error of imposing post-release controls, the resentencing did not affect the statute of limitations under § 2244(d)(1)(A) governing the petitioner's claims, which did not relate to the imposition of post-release controls.[107] The court explained that *Burton* and *Rashad* were "materially distinguishable," because in those cases, the petitioners had obtained appellate vacation of their sentences in direct criminal appeals on the merits, while Mackey, on the other hand, obtained a *de novo* resentencing to remedy a technical error.[108]

---

[104] ECF # 6 at 13.

[105] *Mackey v. Warden, Lebanon Corr. Inst*., 525 Fed. App'x 357 (6th Cir. 2013).

[106] *Id*. at 359.

[107] *Id*. at 362-63.

[108] *Id.* at 363.

If the Ohio appellate court had ended its review of McDaniel's sentence after the first resentencing, which corrected just a post-release control error, *Mackey* might well apply here. But the issue in this case is whether McDaniel's *second* resentencing, which corrected an allied-offenses error, affected AEDPA's statute of limitations.  Another Sixth Circuit decision, issued just months after *Mackey*, provides more guidance.  In *Eberle v. Warden, Mansfield Corr. Inst.,*[109] the Sixth Circuit observed that "not every modification that can be made to a sentence *automatically* restarts the [AEDPA] statute of limitations."[110]  In that case, the petitioner – again, like McDaniel – did not file a direct appeal from his sentence or conviction.[111]  Three years after he was sentenced, however, he filed a motion to withdraw his guilty plea, raising claims of ineffective assistance of trial counsel and prosecutorial misconduct.[112]  The state appellate court, in reviewing the trial court's denial of petitioner's plea-withdrawal motion, *sua sponte* raised the issue of the petitioner's post-release control sentence.[113]  The court ultimately affirmed the trial court's ruling but vacated the post-release control portion of the petitioner's sentence without remanding for resentencing.[114]  The petitioner argued that the appellate court decision vacating part of the trial court's sentencing

---

[109] *Eberle v. Warden, Mansfield Corr. Inst.*, 532 Fed. App'x 605 (6th Cir. 2013).

[110] *Id.* (emphasis original).

[111] *Id.* at 606.

[112] *Id.* at 606-07.

[113] *Id.* at 607.

[114] *Id.*

entry amounted to a new sentence that restarted the AEDPA statute of limitations on his

ineffective-assistance and prosecutorial-misconduct claims.[115]  The Sixth Circuit rejected that

argument.  It gave two examples of "sentencing modifications" that did not amount to a

"resentencing" sufficient to restart the limitations period:  when a federal prisoner's sentence

is reduced for substantial assistance; and when a sentence is altered to afford presentence

credits.[116]  The court stated that it would not "sort out where the precise line lies between

sentence modifications that are insufficient to restart the limitations period on the one hand,

and new sentences that are sufficient to do so on the other."[117]  But, the court explained,

> two observations about the alteration made to Eberle's sentence persuade us
> that it did not delay finality for habeas purposes. First, Eberle's sentence was
> modified to remedy a technical error. The change did not pertain to his
> underlying conviction, nor did it relate to the basis of the plea bargain Eberle
> struck with the state. Second, as a technical error, his sentence was not
> remanded to the trial court: no resentencing hearing was held, no new
> sentencing entry was filed, and no new judgment issued. In these
> circumstances, a single sentence modification—which, notably, Eberle did not

---

[115] *Id*. at 609.  The petitioner in *Eberle* also argued that the original judgment was not "final" because his timely plea-withdrawal motion "reset" the AEDPA limitations clock with respect to the claims made in it.  *Id*. at 608.  The court rejected this argument, because holding otherwise would "upend[] the [AEDPA's] goal of heading off unwarranted delay," as Ohio law permits the filing of plea-withdrawal motions at any time.  *Id*. at 609 (citing *Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001) (holding denial of motion for delayed appeal does not "retrigger[]" AEDPA statute of limitations); *Bronaugh v. Ohio* , 235 F.3d 280, 286 (6th Cir. 2000) (holding denial of application to reopen direct appeal does not restart AEDPA statute of limitations).

[116] *Id*. at 610.  Another example of a change in sentencing that does not affect the finality of a judgment is a *nunc pro tunc* judgment entry correcting a clerical error.  *See, e.g.*, *Davis v. Coleman*, No. 5:11cv996, 2012 WL 5385209, at *2 (N.D. Ohio Nov.1, 2012).

[117] *Id*.

raise in his withdrawal motion—is not a new sentence that restarts the AEDPA clock.[118]

These considerations buttress my conclusion that McDaniel's 2013 resentencing did, in fact, reset the statute of limitations governing his federal habeas petition.  The state appellate court remanded McDaniel's case to the trial court to consider the allied-offense issue under current Ohio law.  Therefore, unlike in *Mackey* and *Eberle*, the resentencing at issue here did not correct a technical sentencing error, but addressed an issue that relates directly to McDaniel's underlying convictions.  Also contrary to those cases, McDaniel attacks only the second resentencing and the allied-offenses ruling in his habeas petition; he does not attempt to raise claims challenging his 2003 convictions.  Moreover, the state courts clearly treated the 2013 judgment as a resentencing rather than a modification of the original sentence.  As already noted, the 2013 judgment was a new "judgment of conviction" under Ohio law, issued upon remand from the state appellate court and after further briefing by the parties.[119]  Under these circumstances, it is difficult to see how the statute of limitations for this claim would commence on the date of his original sentencing rather than the date of the sentence he is actually challenging.

Thus, under § 2244(d)(1)(A), the state trial court's 2013 judgment resentencing McDaniel triggered the AEDPA one-year limitations period once it became "final" after

---

[118] *Id*.

[119] *See* ECF No. # 6, Attachment 1 at 99-100, 195-96.

-22-

direct review of the new sentence, on August 27, 2014.  McDaniel filed his federal habeas petition in May 2015, well within the limitations period, and his petition is timely.

### 2. *Non-Cognizable Claims*

The federal habeas statute, by its own terms, restricts the writ to state prisoners in custody in violation of federal law.[120]  Accordingly, to the extent a petitioner claims that his custody is a violation of state law, the petitioner has failed to state a claim upon which federal habeas relief may be granted.[121]  In such circumstances, a claim for federal habeas relief based solely on the ground of purported violation of state law is properly dismissed by the federal habeas court as non-cognizable.[122]

But a claimed error of state law may nevertheless serve as the basis for federal habeas relief if such error resulted in the denial of "fundamental fairness" at trial.[123]  The Supreme Court has made clear that it defines "very narrowly" the category of infractions that violate the "fundamental fairness"of a trial.[124]  Specifically, such violations are restricted to offenses against "'some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"[125]

---

[120] 28 U.S.C. § 2254(a).

[121] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

[122] *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007).

[123] *Estelle*, 502 U.S. at 67-68.

[124] *Bey*, 500 F.3d at 522 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

[125] *Id*. at 521 (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).

The petitioner bears the burden of showing a violation of a principle of fundamental fairness.[126] In so doing, the federal habeas court must follow the rulings of the state's highest court with respect to state law[127] and may not second-guess a state court's interpretation of its own procedural rules.[128]  Further, while in general distinct constitutional claims of trial error may not be cumulated to grant habeas relief,[129]  the Sixth Circuit has recognized that "'[e]rrors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair.'"[130]

3.    *AEDPA review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[131] codified at 28 U.S.C. § 2254, strictly circumscribes a federal court's ability to grant a writ of habeas corpus.[132]  Pursuant to AEDPA, a federal court shall not grant a habeas petition with respect to any claim adjudicated on the merits in state court unless the state adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or

---

[126] *Id.*

[127] *Wainwright v. Goode*, 464 U.S. 78, 84 (1983).

[128] *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).

[129] *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006).

[130] *Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006) (quoting *Walker v. Engle*, 703 F.2d 959, 963 (6th Cir. 1983)).

[131] Pub. L. No. 104-132, 110 Stat. 1214 (1996).

[132] *See* 28 U.S.C. § 2254 (2012).

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding.[133]

The Supreme Court teaches that this standard for review is indeed both "highly deferential" to state court determinations,[134] and "difficult to meet,"[135] thus, preventing petitioner and federal court alike "from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."[136]

a.      *"Contrary to" or "unreasonable application of" clearly established federal law*

Under § 2254(d)(1), "clearly established Federal law" includes only Supreme Court holdings and does not include dicta.[137]  In this context, there are two ways that a state court decision can be "contrary to" clearly established federal law:[138] (1) in circumstances where the state court applies a rule that contradicts the governing law set forth in a Supreme Court case,[139] or (2) where the state court confronts a set of facts that are materially indistinguishable from a Supreme Court decision, but nonetheless arrives at a different

---

[133] 28 U.S.C. § 2254(d) (2012).

[134] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citation omitted).

[135] *Id.* (citation omitted).

[136] *Rencio v. Lett*, 559 U.S. 766, 779 (2010).

[137] *Howes v. Fields*, 132 S. Ct. 1181, 1187 (2012) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

[138] *Brumfield v. Cain*, 135 S. Ct. 2269, 2293 (2015).

[139] *Id.*

result.[140]  A state court's decision does not rise to the level of being "contrary to" clearly established federal law simply because that court did not cite the Supreme Court.[141]  The state court need not even be aware of the relevant Supreme Court precedent, so long as neither its reasoning nor its result contradicts it.[142]  Under the "contrary to" clause, if materially indistinguishable facts confront the state court, and it nevertheless decides the case differently than the Supreme Court has previously, a writ will issue.[143]  When no such Supreme Court holding exists the federal habeas court must deny the petition.

A state court decision constitutes an "unreasonable application" of clearly established federal law when it correctly identifies the governing legal rule, but applies it unreasonably to the facts of the petitioner's case.[144]  Whether the state court unreasonably applied the governing legal principle from a Supreme Court decision turns on whether the state court's application was objectively unreasonable.[145]  A state court's application that is "merely wrong," even in the case of clear error, is insufficient.[146]  To show that a state court decision is an unreasonable application, a petitioner must show that the state court ruling on the claim

---

[140] *Id.*

[141] *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (per curiam).

[142] *Id.*

[143] *See id.*

[144] *White v. Woodall*, 134 S. Ct. 1697, 1699 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 407 (2000)).

[145] *Id.*(quoting *Lockyear v. Andrade*, 538 U.S. 63, 75-76. (2003)).

[146] *Id.*

-26-

being presented to the federal court "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[147] Under the "unreasonable application" clause, the federal habeas court must grant the writ if the State court adopted the correct governing legal principle from a Supreme Court decision, but unreasonably applied that principle to the facts of the petitioner's case.

b.      *"Unreasonable determination" of the facts.*

The Supreme Court has recognized that § 2254(d)(2) demands that a federal habeas court accord the state trial courts substantial deference:[148]    Under § 2254(e)(1), "a determination of a factual issue made by a [s]tate court shall be presumed to be correct."[149] A federal court may not characterize a state court factual determination as unreasonable "merely because [it] would have reached a different conclusion in the first instance."[150] While such deference to state court determinations does not amount to an "abandonment or abdication of judicial review" or "by definition preclude relief,"[151] it is indeed a difficult standard to meet.   "The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply *de novo* review of factual

---

[147] *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

[148] *Brumfield*, 135 S. Ct. at 2277.

[149] 28 U.S.C. § 2254(e)(1) (2012).

[150] *Brumfield*, 135 S. Ct. at 2277 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

[151] *Id.* (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination.") (internal quotation marks omitted)).

findings and to substitute its own opinions for the determination made on the scene by the trial judges."[152]

**4.      *Double jeopardy***

First, the Double Jeopardy clause essentially prevents a sentencing court from prescribing a greater punishment than the legislature provided. The Double Jeopardy clause does permit multiple punishments for the same conduct if the legislature has so provided and recognizes no exception for necessarily included or overlapping offenses.[153]

In Ohio, the Sixth Circuit, citing the Supreme Court of Ohio, has determined that Ohio's General Assembly "permits multiple punishments if the defendant commits offenses of dissimilar import. If, however, the defendant's actions constitute two or more allied offenses of similar import, the defendant may only be convicted (specifically, found guilty and punished) of only one. But, if offenses of similar import are committed separately or with a separate animus, the defendant may be punished for both."[154]

In assessing the intent of the state legislature as to multiple punishment for the same conduct, a federal habeas court is bound by the state's construction of its own statutes.[155] Thus, once a state court has determined that the state legislature intended cumulative

---

[152] *Davis v. Ayala*, 135 S. Ct. 2187, 2202 (2015) (citation omitted).

[153] *White v. Howes*, 586 F.3d 1025, 1033 (6th Cir. 2009).

[154] *Volpe v. Trim*, 708 F.3d 688, 692 (6th Cir. 2013).

[155] *Id*. at 696 (citation omitted).

punishments for a single criminal incident, the federal habeas court is bound by that determination.[156]

## C.    Application of standards

Ground One should be dismissed as a non-cognizable state law claim

Ground One, which argues that McDaniel's consecutive sentences impose double jeopardy, should be dismissed as a non-cognizable state law claim.

First, the Double Jeopardy clause essentially prevents a sentencing court from prescribing a greater punishment than the legislature provided.  The Double Jeopardy clause does permit multiple punishments for the same conduct if the legislature has so provided and recognizes no exception for necessarily included or overlapping offenses.[157]

In Ohio, the Sixth Circuit, citing the Supreme Court of Ohio, has determined that Ohio's General Assembly "permits multiple punishments if the defendant commits offenses of dissimilar import. If, however, the defendant's actions constitute two or more allied offenses of similar import, the defendant may only be convicted (specifically, found guilty and punished) of only one. But, if offenses of similar import are committed separately or with a separate animus, the defendant may be punished for both."[158]

---

[156] *Id.* (citation omitted).

[157] *White v. Howes*, 586 F.3d 1025, 1033 (6th Cir. 2009).

[158] *Volpe v. Trim*, 708 F.3d 688, 692 (6th Cir. 2013).

-29-

In assessing the intent of the state legislature as to multiple punishment for the same conduct, a federal habeas court is bound by the state's construction of its own statutes.[159] Thus, once a state court has determined that the state legislature intended cumulative punishments for a single criminal incident, the federal habeas court is bound by that determination.[160]

In this case, the state appeals court applied Ohio law in considering whether the conduct by McDaniel can be construed as allied offenses of similar import subject to merger, or if the conduct resulted in the commission of dissimilar offenses, or that the offenses were committed separately or if the defendant had a separate animus for each offense.[161]  The appeals court concluded that because McDaniel entered guilty pleas to both the attempted felony murder of one victim, Harper, and the felonious assault of the second victim, Ellis, his crimes involved harm to two separate victims and were of dissimilar import.[162]  The court further noted the following facts supporting its determination:

> {¶ 12} At the original trial, Ellis testified that he, Harper, and another friend, Michael Marshall, took Harper's car to a car wash to vacuum it. Both Ellis and Harper were standing at different spots outside the car searching for change to operate the vacuum when Ellis dropped his change and bent down to pick it up. Ellis testified that, when he stood back up, a man was standing next to him with a gun. Ellis' arm batted at the gun, which struck his head and discharged. Ellis then ran through one of the bays of the car wash to the fence behind the

---

[159] *Id.* at 696 (citation omitted).

[160] *Id.* (citation omitted).

[161] ECF # 6, Attachment 2 at 575-77.

[162] ECF # 6, Attachment 2 at 580.

car wash and hid behind a dumpster. As he ran, Ellis heard multiple gunshots and saw sparks coming off the wall of the car wash bay as a bullet ricocheted off the wall. There was testimony at trial that the fence Ellis ran to appeared to have several bullet holes in it. Additionally, there was testimony that a bullet shattered the window of a house, which was in a direct line with the direction Ellis was running. The bullet recovered from the house was a .380 caliber bullet. The police also found numerous .380 shell casings on the ground in the vicinity of Harper's car.

{¶ 13} In addition to the .380 shell casings, the police also found several .45 caliber casings near the back of Harper's car. Harper's body was discovered lying on the ground behind his car. There was testimony from the Summit County Medical Examiner's Office that Harper died as a result of a single gunshot wound to his chest. Dr. Sterbenz testified that the wound was a contact-range wound, meaning that the muzzle of the firearm that killed Harper was pressed against his chest when it was fired. Marshall, the other man in Harper's car, testified that he saw two men near Harper's car before the shooting commenced. He specified that he saw one man near Ellis with a gun, but that the other had walked around the other side of the car.[163]

Accordingly, the appeals court found no error in the trial court's decision not to merge the offenses for sentencing purposes.[164]

Based on the findings of Ohio courts that the state legislature authorized multiple punishments for offenses committed against separate victims, and that the two offenses here each involved two different victims, I recommend dismissing Ground One as stating a non-cognizable claim.

## Conclusion

For the foregoing reasons, I recommend that the petition of Marcel D. McDaniel for a writ of habeas corpus be dismissed.

---

[163] *Id.* at 577-78.

[164] *Id.*

Dated: August 30, 2016                    s/ William H. Baughman, Jr.
                                          United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[165]

---

[165] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).